# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| TERESITA OROZCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 11-11135-FDS |
| | ) | |
| GMAC MORTGAGE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

## MEMORANDUM AND ORDER
## ON MOTION TO DISMISS

**SAYLOR, J.**

This action arises from a homeowner's default on a home loan and the resulting mortgage foreclosure. In 2000, plaintiff Teresita Orozco purchased a home in Brookfield, Massachusetts. As part of the transaction, she granted a mortgage on the house to the lender, which was ultimately assigned to defendant GMAC Mortgage, LLC.

After she fell behind on payments in 2010, she sought a loan modification agreement pursuant to the Home Affordable Modification Program ("HAMP"), a federal initiative designed to provide incentives for lenders to agree to modification of home loan agreements in lieu of foreclosure. GMAC nonetheless proceeded to foreclose on the house before issuing a decision as to the loan modification request. At the foreclosure sale, the property was purchased by GMAC.

Orozco commenced this action against GMAC on June 10, 2011, in Massachusetts Superior Court. Defendant removed the action to this Court. Jurisdiction is based on diversity

of citizenship.

Defendant has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  For the reasons set forth below, the motion will be granted in part and denied in part.

## I.    Background

### A.    Factual Background

The facts are stated as alleged in the complaint.[1]

In 2000, plaintiff Teresita Orozco purchased a home at 94 Rice Corner Road in Brookfield, Massachusetts.  (Compl. ¶ 6).  In connection with her purchase of the property, she received a loan and signed a mortgage in the original principal amount of $126,935; the mortgage was ultimately assigned to defendant GMAC Mortgage, LLC, which serviced the loan.

In August 2009, as a result of two unsuccessful surgeries and the related complications, Orozco was rendered unable to work and began receiving long-term disability benefits.  (Compl. ¶¶ 7-9).  Due to her medical condition and inability to work, Orozco had difficulty making her mortgage payments.  (Compl. ¶ 10).  Orozco contacted GMAC concerning a loan modification in late 2009 or early 2010, but received no information in response.  (Compl. ¶ 11).

In August 2010, Orozco sought assistance from NeighborWorks Home Ownership Center of Worcester ("HOCW"), a HUD-certified agency, in dealing with her mortgage.  (Compl. ¶ 12).  On September 3, 2010, HOCW faxed Orozco's HAMP loan modification request to GMAC.

---

[1] The court also draws on exhibits to the complaint and other uncontested documents on which the complaint relies.  *See Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

(Compl. ¶ 13).  On September 8, 2010, HOCW re-faxed Orozco's paperwork to GMAC.  On September 13, 2010, Tracey Conway of GMAC confirmed its receipt of Orozco's loan modification request.  (Compl. ¶ 18).

At some point while this was ongoing, Orozco's property was scheduled for a foreclosure auction to occur on November 22, 2010.  (Compl. ¶ 29).

Throughout September and October, 2010, Robert Ochoa, an HOCW counselor, was in contact with Conway concerning Orozco's loan modification request.  (Compl. ¶¶ 18-25).  Ochoa submitted Orozco's financial information and supporting documentation to GMAC, including information from the Commonwealth of Massachusetts concerning the benefits she was receiving for adoptive and foster care. (Compl. ¶¶ 18-25).

On November 1, 2010, Conway requested a three-month profit-and-loss statement for Orozco's adoptive and foster-care income.  (Compl. ¶ 26).  On November 19, Ochoa e-mailed Conway a three-month profit-and-loss statement.  (Compl. ¶ 28).  Also on November 19, Ochoa separately told both Conway and a GMAC customer service representative that, pursuant to HAMP guidelines, the foreclosure auction scheduled for November 22 should be postponed pending the resolution of Orozco's loan modification request.  (Compl. ¶¶ 28-29).

Nonetheless, on November 22, 2010, an auction sale of the property was conducted as scheduled.  GMAC purchased the property itself for $152,621.65.  (Compl. ¶¶ 31, 33).  Approximately one week later, Orozco received a letter from GMAC dated November 23, 2010, denying her request for a loan modification.  (Compl. ¶ 32; Compl. Ex. 2).  The reasons for denial were checked off on a list as follows:  "(1) We service your loan on behalf of an investor or group of investors that has not given us authority to modify your loan under the program

3

requested; (2) Our records indicate that this loan has gone for foreclosure sale; and (3) HAMP

program denied.  Account is in review for another workout."  (Compl. Ex. 2).

On February 25, 2011, Orozco's attorney sent a demand letter pursuant to Mass. Gen.

Laws ch. 93A.  (Compl. ¶ 34).  On February 28, Orozco received a summary process eviction

summons and complaint from GMAC.  (Compl. ¶ 35).

On June 10, 2011, Orozco commenced this action in Massachusetts Superior Court.  On

June 24, 2011, the case was removed to this Court.  The complaint alleges that defendant (1)

violated the Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A; (2) breached

the implied covenant of good faith and fair dealing; (3) negligently misrepresented to Orozco

that she would be protected from foreclosure as a result of her HAMP application; and (4)

intentionally inflicted emotional distress.

### B.    Legal Background

In February 2009, the Secretary of the Treasury established HAMP under authority

delegated to him by the Emergency Economic Stabilization Act of 2008 and the Troubled Asset

Relief Program ("TARP").  12 U.S.C. §§ 5201, 5211-5241.[2]  The goal of HAMP is to provide

relief to borrowers who have defaulted or are likely to default by reducing mortgage payments to

sustainable levels, without discharging any of the underlying debt.  *See* U.S. Dep't of the

Treasury, Supplemental Directive 09-01, *available at* https://www.hmpadmin.com/portal/

programs/docs/hamp_servicer/sd0901.pdf.  Under HAMP, loan servicers are provided with

$1,000 incentive payments for each permanent mortgage-loan modification completed.  *Id.* at 23.

---

[2] The Department of the Treasury established HAMP jointly with the Federal Housing Finance Agency, the
Federal National Mortgage Association ("Fannie Mae"), and the Federal Home Loan Mortgage Corporation
("Freddie Mac").  *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 347 n.3 (D. Mass. 2011).

4

These modifications proceed under a uniform process designed to identify eligible borrowers and render their debt obligations more affordable and sustainable.  *Id.* at 1.

The Department of the Treasury has issued a series of directives that provide guidance to servicers implementing HAMP.  *Id.*  Under these guidelines, mortgage servicers are directed to identify and solicit borrowers who are in default on their mortgage payments, or soon will be.  *See id.*  Within this group, borrowers may be eligible for a loan modification under HAMP if the mortgage loan originated before January 1, 2009; if the mortgage is secured by the borrower's primary residence; and if the mortgage payments amount to more than 31% of the borrower's monthly income.  *Id.* at 2.[3]  To participate in HAMP, borrowers must submit an affidavit documenting financial hardship.  *Id.* at 3.  In addition, the servicer must conduct a Net Present Value ("NPV") test, which assesses whether it would be more advantageous to foreclose or to modify the terms of the first-lien loan.  *Id.* at 3-5.

## II.     <u>Standard of Review</u>

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).

---

[3] There are several other eligibility requirements.  Among other things, the mortgage loan must be secured by property containing no more than four units, and, depending on the number of units, the guidelines set ceilings on the unpaid principal balance.  *See id.* at 2-3.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

### III.   Analysis

#### A.   Massachusetts Consumer Protection Statute

Mass. Gen. Laws ch. 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Conduct is unfair or deceptive if it falls "within any recognized or established common law or statutory concept of unfairness." *VMark Software v. EMC Corp.*, 37 Mass. App. Ct. 610, 620 (1994). Actionable conduct under the statute encompasses "[a]ctions involving fraudulent representations in knowing disregard of the truth," *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 780 (1986), and "conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 474 (1991) (quoting *Wang Labs., Inc. v. Business Incentives, Inc.*, 398 Mass. 854, 857 (1986)).

Plaintiff contends that defendant engaged in unfair and deceptive practices by wrongfully foreclosing on her mortgage while she was being considered for a loan modification under HAMP.  HAMP itself does not create a private right of action.  *Okoye v. Bank of N.Y. Mellon*, 2011 U.S. Dist. LEXIS 82769, at *22 (D. Mass. July 28, 2011).  Nonetheless, conduct that violates a statute or regulation for which there is no private means of recovery may constitute a

chapter 93A violation.  However, "for a cause of action pursuant to chapter 93A to proceed, the violation [of the other statute or regulation] must be determined to be unfair or deceptive in and of itself[.]"  *Morris v. BAC Home Loans Servicing, L.P.*, 775 F. Supp. 2d 255, 259 (D. Mass. 2011); *see also Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 66 (1st Cir. 2009) ("To prove [a claim under chapter 93A], it is neither necessary nor sufficient that a particular act or practice violate common or statutory law.").

In assessing a chapter 93A claim that is premised on alleged violations of HAMP, the relevant inquiry is (1) whether there is a HAMP violation, (2) whether the violation consists of conduct that would be independently actionable under chapter 93A, and (3) whether, if the conduct is actionable, recovery under chapter 93A is consistent with the objectives and enforcement mechanisms of HAMP.  *Morris*, 775 F. Supp. 2d at 259.  Each of these three requirements must be adequately pleaded for a chapter 93A action to survive a motion to dismiss.  *See Ording v. BAC Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 83269, *21 (D. Mass. Jan. 10, 2011) (dismissing a complaint for failure to plead the first requirement).  In *Morris*, the court resolved the third of these factors, determining that chapter 93A recovery is consistent with HAMP.  775 F. Supp. 2d at 260-262.  Thus, this Court must determine whether plaintiffs have alleged conduct that constitutes a HAMP violation, and whether that conduct would be independently actionable under chapter 93A.

Plaintiff has met the first factor in pleading facts that constitute a violation of HAMP. She alleges that defendant foreclosed on the property before it had issued a decision on her properly submitted loan modification request.   This conduct is a violation of the HAMP guidelines, which specifically provide:

When a borrower submits a request for HAMP consideration after a foreclosure sale date has been scheduled and the request is received no later than midnight of the seventh business day prior to the foreclosure sale date (Deadline), the servicer must suspend the sale as necessary to evaluate the borrower for HAMP.  (Def. Opp., Ex. A at Section 3.3).

Plaintiff has also met the second factor.  The complaint alleges facts that describe conduct that is not only a violation of HAMP, but is independently unfair or deceptive.  *See Morris*, 775 F. Supp. 2d at 256 (holding that "HAMP violations can give rise to a viable 93A claim if the activity would be independently actionable under chapter 93A as unfair and deceptive."); *see also Blackwood v. Wells Fargo Bank*, *N.A.,* 2011 WL 1561024, *4 (D. Mass.,2011).  In *Blackwood*, the court considered allegations of the same HAMP violation alleged here—proceeding with a foreclosure sale while a loan modification request is pending—and found them to be conduct of the type that would be independently actionable under 93A.  *Blackwood*, 2011 WL 1561024 at *4.  The court in *Blackwood* based that determination on *Morris*, as well as the Supreme Judicial Court's holding in *Kattar v. Demoulas.* 433 Mass. 1, 13 (2000) ("[W]here foreclosure of a mortgage, even on an actual default, is conducted in bad faith to the detriment of the mortgagor, an action [under chapter 93A] will lie.").  This Court likewise finds that plaintiff's allegations that defendant proceeded with foreclosure on her property while it was still considering her loan modification request could constitute an unfair or deceptive practice.  This conclusion is further supported by plaintiff's allegations that defendant prolonged her application process and requested unnecessary information despite knowledge that her loan modification would never be approved.

Defendant contends that even if plaintiff meets the above factors, her chapter 93A claim fails because her allegations do not demonstrate a causal connection between the deceptive

practices and any claimed loss.  Although it is certainly true that "proving a causal connection between a deceptive act and a loss to the consumer is an essential predicate for recovery under [chapter 93A]," plaintiff need not at this stage do more than plead facts from which one could reasonably infer a causal connection.  *Hershenow v. Enter. Rent-A-Car Co. of Boston, Inc.*, 403 Mass. 722, 730 (1989).  Plaintiff has met this burden.  Plaintiff alleges that she suffered emotional and financial loss as a result of defendant foreclosing on her property while she was still being considered for a loan modification.  Contrary to defendant's contention, plaintiff need not allege specifically how her situation would have differed had GMAC foreclosed one day later than November 23, 2010 (the date of the letter denying her loan modification request).  Whether plaintiff would have been able to pursue alternatives to foreclosure or should have had her request for modification granted are factual questions about the extent of the loss that are properly resolved at a later stage.

Accordingly, defendant's motion to dismiss the chapter 93A claim will be denied.

**B.**      **Implied Covenant of Good Faith and Fair Dealing**

Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract.  *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).  The covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's*, 411 Mass. at 471-72 (quotations omitted).  Put another way, the parties to a contract implicitly agree "to deal honestly and in good faith in both the performance and enforcement of the terms of their contract."  *Hawthorne's, Inc. v. Warrenton Realty, Inc.*, 414 Mass. 200, 211 (1993).  "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the

intended and agreed expectations of the parties in their performance." *Uno Restaurants*, 441 Mass. at 385.

The covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship. *Uno Restaurants*, 441 Mass. at 385-86; *Accusoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001). However, "[a] party may breach the covenant of good faith and fair dealing . . . without breaching any express term of th[e] contract. Otherwise, the implied covenant would be a mere redundancy." *Massachusetts v. Schering-Plough Corp.*, 779 F. Supp. 2d 224, 240 (D. Mass. 2011) (quoting *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005)). "The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance." *Speakman*, 367 F. Supp. 2d at 132.

"It is familiar law that a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor." *West Roxbury Co-op. Bank v. Bowser,* 324 Mass. 489, 492 (1949). Therefore, plaintiff need not rely on a third-party-beneficiary theory to recover for bad-faith actions by defendant with regard to the foreclosure sale.

Plaintiff alleges that defendant breached the implied covenant of good faith and fair dealing by proceeding with the foreclosure sale in violation HAMP; by refusing to consider rescinding the foreclosure sale; and by filing a summary-process eviction action after receiving her chapter 93A demand letter. (Compl. ¶ 52).

10

In support of her position that defendant violated the covenant by proceeding with the foreclosure sale while a HAMP application was pending, plaintiff cites *Cruz v. Hacienda Assocs., LLC (In re Cruz)*, 446 B.R. 1 (Bankr. D. Mass. 2011), and *Blackwood,* 2011 WL 1561024.  In *Cruz*, the bankruptcy court ruled that there was a substantial likelihood that a bank violated the implied covenant by scheduling and executing a foreclosure sale while a debtor's application for a loan modification under HAMP was pending.  *Cruz*, 446 B.R. at 4-5.  In *Blackwood*, facing a directly analogous set of facts, the court ruled that when a mortgagee forecloses without the legal authority to do so, it is acting in bad faith in violation of its obligation to the mortgagor.  *Blackwood,* 2011 WL 1561024 at *5.

Here, the allegations in the complaint state a claim under the reasoning of the courts in *Cruz* and *Blackwood*.  Plaintiff's loan modification application was pending at the time of the foreclosure sale.   This is precisely the same lack of notice to the debtor that the court in *Cruz* found dispositive.

Accordingly, the motion to dismiss will be denied as to the claim that defendant breached the implied covenant of good faith and fair dealing.

### C.  Negligent Misrepresentation

To assert a claim for negligent misrepresentation in Massachusetts, plaintiffs must allege that defendant "'(1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information.'"  *Braunstein v. McCabe*, 571 F.3d 108, 126 (1st Cir. 2009) (quoting *Gossels v. Fleet Nat'l Bank*, 453 Mass. 366,

902 (2009)).  Defendant contends that the complaint fails to allege sufficient facts to support a

claim that defendant supplied plaintiff with false information and that plaintiff suffered a

pecuniary loss in reliance.

Plaintiff alleges that defendant's actions created a "false impression" that she would be

protected from foreclosure as a result of her HAMP application, and that she relied on that

impression to her financial detriment.  (Compl. ¶¶ 58-59).  Specifically, plaintiff alleges that

defendant's repeated requests for more information to supplement her loan modification request

created an impression that she would protected from foreclosure until a decision was issued on

that request.  (*See* Compl. ¶¶ 19-32, 56-58).

Massachusetts courts have held actionable a defendant's words and conduct that create a

false impression as to the existence of a material fact.  *Danca v. Taunton Sav. Bank*, 385 Mass. 1,

8 (1982) (holding a bank liable for "creating the impression that all was in order when, in fact, it

was not."); *DeMarco v. Granite Sav. Bank*, 1993 Mass. App. Div. 122, 124 (1993).  However, it

is well-established that to be actionable, a misrepresentation must be one of fact, not of

expectation, estimate, opinion, or judgment.  *Powell v. Rasmussen*, 355 Mass. 117, 118 (1969).

A fact is something "susceptible of knowledge."  *See Wire & Textile Machinery, Inc. v.

Robinson*, 332 Mass. 417, 421 (1955)*; see also Chatham Furnace Co. v. Moffatt*, 147 Mass. 403,

406 (1888).  Furthermore, the ordinary rule is that "false statements of opinion, of conditions to

exist in the future, or of matters promissory in nature are not actionable."  *Yerid v. Mason*, 341

Mass. 527, 530 (1960).  Consequently, an action for misrepresentation cannot be premised on the

mere nonperformance of a promise.  *Commonwealth v. True*, 16 Mass. App. Ct. 709, 711 (1983).

Unlike the mortgagors in *Danca* and *DeMarco*, plaintiff has not alleged that defendant's

12

words and conduct created the impression that her loan modification request was "in order" or was going to be approved.  The false impression that plaintiff alleges that defendant created was essentially that defendant would abide by the HAMP guidelines.  This amounts to nothing more than a promissory misrepresentation, and is therefore not actionable under a theory of negligent misrepresentation.

Because the Court finds that the representation alleged is not one that can be the basis for this cause of action, it need not reach the issue of whether plaintiff alleged pecuniary loss suffered in reliance.

Accordingly, the motion to dismiss will be granted as to the claim of negligent misrepresentation.

### D.     Intentional Infliction of Emotional Distress

In Massachusetts, to state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege (1) that the defendant either (a) intended to inflict emotional distress or (b) knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the conduct caused the plaintiff emotional distress; and (4) that the emotional distress was severe and of a nature that no reasonable person could be expected to endure it.  *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976).

Here, the bank's decision to pursue a home foreclosure following plaintiff's default does not rise to the level of extreme misconduct necessary under that standard.  Conduct is "extreme and outrageous" if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987).  Recovery for an IIED claim

13

generally "requires more than 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (quoting *Foley*, 400 Mass. at 99). While "home foreclosure is a terrible event and likely fraught with unique emotions and angst," foreclosures, even ones that may involve improper conduct, do not readily go "beyond all possible bounds of decency." *Moore v. Mortgage Elec. Registration Sys., Inc.*, 2012 WL 253834, at *21 (D.N.H. 2012) (internal citations omitted). Absent extreme aggravating factors, a court cannot declare that a foreclosure is something that is "atrocious and utterly intolerable in a civilized community." *Id. See also Alpino v. JPMorgan Chase Bank, Nat'l Ass'n*, 2011 U.S. Dist. LEXIS 43210, at *8 (D. Mass. April 21, 2011) (dismissing claim for IIED where, "[a]t most, the defendant failed to consider the plaintiff for a mortgage modification under HAMP and then failed to operate an open and fair foreclosure sale").

Because the complaint does not allege conduct that is sufficiently outrageous to support an IIED claim, defendant's motion to dismiss will be granted as to that claim.

## IV.    Conclusion

For the foregoing reasons, defendant's Motion to Dismiss the complaint is GRANTED as to the claims alleging negligent misrepresentation and intentional infliction of emotional distress and DENIED as to the claims alleging violation of Mass. Gen. Laws ch. 93A and breach of the implied covenant of good faith and fair dealing.

**So Ordered.**

                                                    /s/ F. Dennis Saylor
                                                    F. Dennis Saylor IV
Dated:  October 1, 2012                             United States District Judge

14